UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

SONJAH HOWARD,

                          Plaintiff,

v.                                                      Case No. 3:14-CV-1155 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                          Defendant.
—————————————————————————

APPEARANCES:                                  OF COUNSEL:

LACHMAN & GORTON                          PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089


U.S. SOCIAL SECURITY ADMIN.              SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

        Currently before the Court, in this Social Security action filed by Sonjah Howard

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 12, 17.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born on April 29, 1979.  Plaintiff has a ninth grade education, and has worked as a telemarketer.  Generally, Plaintiff's alleged disability consists of preexisting intellectual deficits and the following impairments resulting from an injury at work on November 4, 2010: cervical disc displacement, L4/5 annular disc tear, C6/7 broad based posterior disc bulge, moderate spinal stenosis, moderate right C6 neural foraminal stenosis, and post traumatic stress disorder ("PTSD").  Plaintiff's alleged disability onset date is April 27, 2011.

## B. Procedural History

On November 9, 2011, Plaintiff applied for Disability Insurance Benefits.  Plaintiff's application was denied on May 8, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On June 11, 2013, Plaintiff appeared in a video hearing before the ALJ, John P. Ramos.  (T. 30-66.)  On August 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-29.)  On August 26, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 14-23.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016, and has not engaged in substantial gainful activity since April 27, 2011.  (T. 14.)  Second, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, thoracic sprain, PTSD, anxiety disorder, and pain disorder are severe impairments, but that Plaintiff's obesity is not a severe impairment.  (T. 14-15.)  Third,

the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 15-16.) The ALJ considered Listings 1.04, 12.06, and 12.08. (*Id.*) Fourth, the ALJ found that Plaintiff

> retains the residual functional capacity ["RFC"] to lift no more than 10 pounds at a time; stand for 2 hours out of an 8 hour workday; walk for 2 hours out of an 8 hour workday; sit for 6 hours out of an 8 hour workday; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; can relate to and interact with others to the extent necessary to carry out simple tasks; and can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

(T. 17.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work as a telemarketer. (T. 21.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 22.)

### D.     The Parties' Briefings on Their Cross-Motions

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's mental RFC assessment was unsupported by substantial evidence and inconsistent with the ALJ's determination that Plaintiff had severe mental impairments. (Dkt. No. 12, at 9-15 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ (1) failed to order a full intelligence quotient ("IQ") test, and (2) improperly weighed the medical evidence of record regarding Plaintiff's mental limitations. (*Id.*) Second, Plaintiff argues that the ALJ erred in formulating the physical RFC and weighing the medical evidence of record regarding Plaintiff's physical limitations. (*Id.* at 16-21.) Third, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id.* at 20-21.) Fourth, and finally,

Plaintiff argues that the ALJ's step five determination was not supported by substantial evidence because the ALJ (1) failed to consider Plaintiff's ability to maintain regular attendance, and (2) failed to consult a vocational expert. (*Id.* at 21-25.)

Defendant makes five arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ was not required to order a full IQ test. (Dkt. No. 17, at 4-5 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's RFC was supported by substantial evidence. (*Id.* at 5-6.) Third, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 6-7.) Fourth, Defendant argues that the ALJ properly evaluated the medical opinion evidence of record. (*Id.* at 8-15.) Fifth, and finally, Defendant argues that the ALJ properly determined that Plaintiff could perform other work in the national economy at step five of the sequential evaluation. (*Id.* at 15-17.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A.   Whether the ALJ Was Required to Order a Full IQ Test

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17, at 4-5 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. § 404.1512(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By

statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1520b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010).

Here, the ALJ considered Plaintiff's intellectual functioning and determined that further intellectual or cognitive testing was not required based on the evidence of record. (T. 15.) The ALJ noted that consultative examiner, Mary Ann Moore, Psy.D., indicated that Plaintiff may have borderline intellectual functioning, but did not definitively diagnose Plaintiff with the condition. (*Id.*) The ALJ noted that examining psychologist, William Connor, Ph.D., observed that Plaintiff had average intellectual functioning, and there was no indication that Plaintiff had impairment in memory, concentration or attentional processes. (T. 15, 606.) Dr. Connor observed that Plaintiff's verbalizations were coherent, relevant, and internally consistent, and that Plaintiff's vocabulary and sentence structure were consistent with average intelligence. (T.

606.)  Finally, the ALJ found that Plaintiff's ability to work at substantial gainful activity level in the past, and currently engage in vocational training to become a medical assistant is inconsistent with cognitive deficits necessitating further intellectual testing.  (T. 21.)  Additionally, the Court notes that Plaintiff indicated that her intellectual deficits did not prevent her from performing her past simple work.  (Dkt. No. 12, at 1 [Pl.'s Mem. of Law].)

Accordingly, based on the evidence of record, the ALJ was not required to order an IQ test.  *See Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (finding that the ALJ was not required to order an IQ test because "where there are no obvious gaps in the administrative record . . . the ALJ is under no obligation to seek additional information"); *Crawford v. Astrue*, 13-CV-6085, 2014 WL 4829544, at *24 (W.D.N.Y. Sept. 29, 2014) (finding that, where the record did not suggest that the plaintiff suffered from "significant cognitive impairments," the few references to the plaintiff's mental retardation in the record were insufficient to trigger the ALJ's duty to order an intelligence examination).

Therefore, remand is not necessary on this basis.

**B.      Whether the ALJ Properly Assessed the Medical Evidence of Record in Determining Plaintiff's Mental RFC**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 4-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

It is the duty of the ALJ to formulate a plaintiff's RFC.  20 C.F.R. § 404.1545.  RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis.  A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F.

App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, or when assessing other medical opinions, the ALJ should consider the following factors to determine the proper weight: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Plaintiff argues that the ALJ determined that Plaintiff had no limitations from her emotional conditions. (Dkt. No. 12, at 1[Pl.'s Mem. of Law].) However, the ALJ's RFC limited Plaintiff to performing simple tasks, which included maintaining attention/concentration for simple tasks, relating to and interacting with others to the extent necessary to carry out simple tasks, making decisions directly related to the performance of simple work, and handling usual work place changes and interactions associated with simple work. (T. 17.) The Court finds that the ALJ's mental RFC determination was supported by substantial evidence, including the opinions of State agency psychologist, T. Harding, and examining psychologist, William Connor, Ph.D.

### i. State Agency Consultant, T. Harding, Psychology

On May 8, 2012, Dr. Harding noted that Plaintiff was diagnosed with PTSD and reported that she had panic attacks. (T. 722.) Dr. Harding opined that Plaintiff could perform unskilled or semiskilled work on a sustained basis. (T. 20.) The ALJ afforded significant weight to this opinion based on Dr. Harding's programmatic expertise, review of Plaintiff's medical records, and the consistency of the opinion with Plaintiff's longitudinal medical record and reported activities of daily living. (*Id.*)

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. § 404.1512(b)(6), 404.1513(c), 404.1527(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

Accordingly, the ALJ's assessment of Dr. Harding's opinion was supported by substantial evidence.

### ii. Examining Psychologist, William Connor, Ph.D.

On October 20, 2011, Dr. Connor diagnosed Plaintiff with chronic pain disorder, mood disorder not otherwise specified, and ruled out bipolar disorder. (T. 606.) Dr. Connor opined that Plaintiff's ability to return to work "depends on physical, not psychiatric disability." (*Id.*) Dr. Connor observed that Plaintiff had average intellectual functioning, and there was no indication that Plaintiff had any impairment in memory, concentration or attentional processes. (T. 15, 606.) Dr. Connor observed that Plaintiff's verbalizations were coherent, relevant, and internally consistent; that Plaintiff's vocabulary and sentence structure were consistent with average intelligence; and that Plaintiff was oriented with respect to person, place, and time. (T. 606.) On December 20, 2011, Dr. Connor opined that Plaintiff could return to work as a telemarketer as long as she was not around the coworker who allegedly attacked her. (T. 20.)

The ALJ afforded some weight to the opinions of Dr. Connor, reasoning that Dr. Connor has programmatic expertise in psychology, examined Plaintiff, and his opinions are consistent with the evidence as a whole including Plaintiff's treatment records and reported abilities. (*Id.*) Accordingly, the ALJ's assessment of Dr. Connor's opinions was supported by substantial evidence.

### iii.     Treating Physician, Darlene Denzien, D.O., and
###          Treating Psychologist, Nathan Hare, Ph.D.

On May 12, 2011, Dr. Denzien submitted a Family Medical Leave Act Statement in which she opined that Plaintiff would be unable to perform any of her job functions as a telemarketer for one year due to her thoracic injury, cervical strain, and PTSD.  (T. 739.)  On December 3, 2011, Dr. Denzien opined that Plaintiff was disabled from work due to her neck and back pain, PTSD, and severe depression.  (T. 1021.)  More specifically, Dr. Denzien opined that Plaintiff might be able to perform a desk job, but that her mental impairments made it difficult for her to keep up with simple tasks at home.  (*Id.*)

On January 6, 2012, Dr. Denzien opined that Plaintiff could not perform her telemarketer job, but could probably perform a less stressful sedentary job on a limited basis.  (T. 20.)  On January 13, 2012, Dr. Denzien opined that Plaintiff could perform less than the full range of sedentary work.  (*Id.*)  On May 17, 2013, Dr. Denzien opined that Plaintiff could sit for four hours and stand/walk for one hour in an eight-hour workday, and should alternate sitting and standing positions every 20 minutes.  (T. 907.)  Dr. Denzien opined that Plaintiff could lift ten pounds up to three hours per day, could never lift more than ten pounds, required complete freedom to rest frequently without restriction during a workday, and would likely miss more than four workdays per month.  (T. 906-07.)  Dr. Denzien opined that Plaintiff had moderate limitation in her abilities to concentrate and sustain work pace as a result of pain or side effects of medication.[1]  (T. 906.)

_____

[1]        The assessment form stated that "moderate" indicates a 20 percent or greater limitation in an area, but not precluding the function.  (T. 906.)

The ALJ afforded less weight to Dr. Denzien's opinions on May 12, 2011, and January 6, 2012, reasoning that these opinions are not particularly descriptive in terms of Plaintiff's functional abilities and that Dr. Denzien is not a specialist in psychiatric matters. (T. 20.) The ALJ noted that Dr. Denzien's opinions on December 3, 2011, January 13, 2012, and May 17, 2013, are more specific regarding Plaintiff's functional abilities, but are less consistent with the other opinions of record, Plaintiff's response to treatment, and Plaintiff's reported activities of daily living. (*Id.*)

Psychologist, Dr. Hare, treated Plaintiff for PTSD, anxiety disorder, and pain disorder from September 12, 2011, to June 10, 2013. (T. 867.) On February 20, 2013, Dr. Hare opined that Plaintiff was ready to be employed and opined that Plaintiff had no more than "fair" limitations in her work and social abilities.[2] (T. 21.) On June 10, 2013, Dr. Hare opined that Plaintiff had "medium" to "marked" limitations in concentration and persistence, "medium" to "extreme" limitations in interaction with others, "marked" limitations in adaptation/stress, and would likely miss two to three workdays per month.[3] (T. 865-66.)

The ALJ afforded some weight to the opinion of Dr. Hare based on his experience and treatment relationship with Plaintiff. (T. 21.) However, the ALJ reasoned that Dr. Hare's conclusion that Plaintiff is disabled and unable to handle stress is inconsistent with (1) Dr. Denzien's treatment notes that Plaintiff's mental health symptoms had stabilized, and (2) Plaintiff's testimony that she is training to become a medical assistant and cares for her two

---

[2]     The assessment form stated that "fair" indicates that the individual's "ability to function is limited but satisfactory." (T. 870.)

[3]     The assessment form stated that an "extreme" limitation indicates a major limitation in the area, with no or very little useful ability to function in the area. (T. 865.) A "marked" limitation indicates there is a serious limitation in the area, with substantial (greater than 33 percent) loss in the ability to function effectively in the area. (*Id.*)

children.  (*Id.*)  Further, the ALJ noted that Dr. Hare's own opinions "appear to be inconsistent," and that Dr. Hare did not provide treatment notes to substantiate his conclusion that Plaintiff's mental abilities declined from February 2013 to June 2013.  (*Id.*)  Finally, the ALJ noted that the remaining evidence of record also does not demonstrate that Plaintiff's mental health declined as indicated by Mr. Hare's opinions.

The Court finds that the ALJ properly applied the regulations in evaluating the opinions from Dr. Denzien and Dr. Hare.  The ALJ accurately summarized Dr. Denzien and Dr. Hare's opinions and treatment notes, considered each source's specialty and treatment relationship with Plaintiff, and cited inconsistencies between each source's opinions and other substantial evidence in the record pursuant to 20 C.F.R. § 404.1527(c).  (T. 19-28.)  Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ properly assessed the medical evidence of record in determining Plaintiff's mental RFC.  Therefore, remand is not necessary on this basis.

**C.**     **Whether the ALJ Properly Assessed the Medical Evidence of Record in Determining Plaintiff's Physical RFC**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 5-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The ALJ determined that Plaintiff has the physical RFC to sit for six hours, stand/walk for two hours, and lift no more than ten pounds at a time during an eight-hour workday.  (T. 17.)

Plaintiff argues that the ALJ's RFC is unsupported by a medical opinion that Plaintiff can sit for six hours during an eight-hour work day, and that the ALJ's physical RFC failed to include a sit/stand option. (Dkt. No. 12, at 16-21 [Pl.'s Mem. of Law].) The Court finds that the ALJ's physical RFC assessment was supported by substantial evidence, including the opinions of (1) consultative examiner, Rehan Khan, M.D, (2) treating physician, Sajid Khan, M.D., and (3) independent examining physician, Lawrence Wiesner, D.O. The Court has also considered the opinions from Dr. Denzien, discussed above in Part III.B.iii. of this Decision and Order, which included assessments of Plaintiff's mental and physical limitations.

### i.  Consultative Physical Examiner, Rehan Khan, M.D.

On March 31, 2012, Dr. Khan performed a physical examination and diagnosed Plaintiff with status post injury thoracic region sprain, cervical and lumbar disc displacement, and PTSD. (T. 704.) Dr. Khan opined that Plaintiff had no gross limitations in sitting, standing, walking, or the use of her upper extremities. (T. 701-05.) The ALJ noted that Dr. Khan observed that Plaintiff had a normal gait, normal strength and sensation in her extremities, and reduced range of motion of her back. (T. 18.) Dr. Khan observed that Plaintiff's cervical spine showed full flexion, extension, and lateral flexion bilaterally. (T. 704.)

The ALJ afforded significant weight to Dr. Khan's opinion because Dr. Khan has programmatic expertise, examined Plaintiff, and his opinion was consistent with his examination findings. (T. 19.) As discussed above in Point III.B.i. of this Decision and Order, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. § 404.1512(b)(6), 404.1513(c), 404.1527(e); *see also Little*, 2015 WL 1399586, at *9.

Therefore, the ALJ's assessment of Dr. Khan's opinion was supported by substantial evidence.

### ii.     Treating Physician, Sajid Khan, M.D.

On January 10, 2012, treating physician, Dr. Khan opined that Plaintiff could perform sedentary work, and would need to stand up, stretch, and change body positions.  (T. 19.)  The ALJ afforded the opinion significant weight, reasoning that Dr. Khan is a specialist in physical medicine and rehabilitation, has treated Plaintiff, and his opinion is consistent with Plaintiff's positive response to treatment and reported activities, including her ability to care for two children, perform household chores with help, drive, and actively look for employment.  (*Id.*)

Plaintiff argues that the ALJ's physical RFC failed to include a sit/stand option based on Dr. Khan's opinion.  (Dkt. No. 12, at 16-21 [Pl.'s Mem. of Law].)  However, an ALJ is not required to adhere strictly to the entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony."  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Accordingly, the ALJ's assessment of Dr. Khan's opinion was supported by substantial evidence.

### iii.     Independent Examining Physician, Lawrence Wiesner, D.O.

On October 7, 2011, Dr. Wiesner examined Plaintiff and opined that she should be able to return to her telemarketer job "immediately." (T. 607-09.) Dr. Wiesner observed that Plaintiff had difficulties performing elements of the physical exam, such as raising her arms which she stated caused her back to spasm. (T. 608.) However, Dr. Wiesner observed that Plaintiff ambulated without difficulty and had no deficits in sensation of the upper and lower extremities, that Plaintiff's muscle strength in the upper and lower extremities was intact, and that Plaintiff's reflexes were symmetrical and intact. (*Id.*) The ALJ afforded more weight to Dr. Wiesner's opinion, reasoning that Dr. Wiesner has programmatic expertise and based his opinion on an examination of Plaintiff. (T. 20.)

Accordingly, the ALJ's assessment of Dr. Wiesner's opinion was supported by substantial evidence.

### iv.     Treating Chiropractor Timothy Stmatke, D.C.

On June 14, 2011, Mr. Stmatke opined that Plaintiff could not return to work due to an inability to maintain a static position. (T. 20.) The ALJ afforded little weight to Mr. Stmatke's opinion, reasoning that the opinion is unsupported by Plaintiff's treatment records, Plaintiff's presentation during consultative exams, and Plaintiff's statement that she has been looking for a job, drives, cares for a special needs child, and is starting school. (T. 20.)

The ALJ must evaluate every medical opinion of record made by an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 404.1527(b). A chiropractor is not an acceptable medical source under the regulations, but an ALJ may consider an opinion from a chiropractor as an "other source" opinion to show the severity of a plaintiff's impairments and how the impairments affect her ability to work. 20 C.F.R. §§ 404.1513(a), (c)-(d). However, an opinion from a

chiropractor is not a medical opinion that is entitled to any particular weight under the regulations. 20 C.F.R. §§ 404.1513(a), 404.1527(b); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide *medical* opinions.") Accordingly, the ALJ's assessment of Mr. Stmatke's opinion was supported by substantial evidence.

For these reasons, the ALJ properly assessed the medical evidence of record in determining Plaintiff's physical RFC, and remand is not necessary on this basis.

**D.     Whether the ALJ's Credibility Evaluation Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17, at 6-8 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically

determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 18.) In assessing Plaintiff's subjective complaints, the ALJ determined that Plaintiff's complaints are not well supported by the evidence as a whole including clinical findings, Plaintiff's treatment history, Plaintiff's reported activities of daily living, and Plaintiff's earnings record. (T. 18-20.)

First, the ALJ determined that substantial medical evidence of record was inconsistent with Plaintiff's alleged degree of disability. The ALJ noted that consultative examiner, Dr. Khan, observed that Plaintiff had a normal gait, and normal strength and sensation in her

extremities.  (T. 18.)   Regarding Plaintiff's mental abilities, the ALJ noted that Dr. Harding

opined that Plaintiff could perform unskilled or semiskilled work on a sustained basis.  (T. 20.)

Additionally, the ALJ noted that Dr. Connor observed that Plaintiff had average intellectual

functioning, and that there was no indication that Plaintiff had impairment in memory,

concentration or attentional processes.  (T. 15, 606.)

Second, the ALJ noted that Plaintiff's treatment history included medications,

chiropractic care, physical therapy, and epidural injections to her cervical and lumbar spine.  (T.

18.)  The ALJ noted that Plaintiff "has not always had consistent treatment due, in part, to

problems obtaining insurance and a reported pregnancy."  (*Id.*)  The ALJ noted that Dr. Denzien

reported that Plaintiff "really is not using her tramadol, her flexeril, or her gabapentin at the

doses prescribed and so is undoubtedly not getting full benefits from these medications."  (*Id.*)

Third, the ALJ found that Plaintiff's activities of daily living were inconsistent with her

alleged degree of disability.  (T. 17, 19.)  The ALJ noted that, despite Plaintiff's physical

symptoms and varying degrees of compliance with treatment, she reported being able to perform

a variety of activities of daily living since her alleged onset date.  (T. 18.)  The ALJ noted that

Plaintiff expressed pride in her functioning as a single mother raising two children, working hard,

and being successful in her work.  (T. 19.)  The ALJ noted that Plaintiff could cook, clean, shop

for food and clothing, care for her children, perform household chores with help, attend frequent

doctor's appointments, actively look for work, and apply for BOCES courses.  (*Id.*)  The ALJ

determined that Plaintiff's ability to perform these tasks suggests that her mental abilities are

greater than alleged.  (*Id.*)  Finally, the ALJ noted that Plaintiff's "earnings record does not

enhance her credibility."  (*Id.*)

For these reasons, the ALJ's credibility evaluation was supported by substantial evidence,

and remand is not necessary on this basis.

**E.      Whether the ALJ's Step Five Determination Was Supported by Substantial
Evidence**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17, at 15-17 [Def.'s Mem.

of Law].)  To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish

that there are a significant number of jobs in the national economy that a plaintiff can perform

based on his or her RFC, age, education, and past relevant work.  20 C.F.R. § 405.1560(c)(1);

*Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004); *Edwards v. Astrue*, 07-CV-0898, 2010 WL

3701776, at *12 (N.D.N.Y. Sept. 16, 2010).  The Commissioner can usually establish that there

is other work that Plaintiff can perform by reliance on the Medical-Vocational guidelines

contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids."

*Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the

plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate.  *Baldwin*,

2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]).  However,

"the mere existence of a non-exertional limitation does not automatically preclude reliance on the

guidelines."  *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at

603.)  A plaintiff's range of potential employment is significantly limited when the plaintiff

"suffers from the additional loss of work capacity beyond a negligible one or, in other words, one

that so narrows a claimant's possible range of work as to deprive him of a meaningful

employment opportunity."  *Baldwin*, 2009 WL 4931363, at *27.

First, Plaintiff argues that the ALJ failed to consider Plaintiff's ability to maintain regular attendance in determining whether Plaintiff could perform other existing work in the national economy. (Dkt. No. 12, at 21-23 [Pl.'s Mem. of Law].) However, the ALJ's RFC found that Plaintiff could attend to a routine and maintain a schedule. (T. 17.) As discussed in Part III.B. and Part III.C. of this Decision and Order, the Court finds that the ALJ's RFC assessment was supported by substantial evidence, including Dr. Harding's opinion that Plaintiff could perform unskilled or semiskilled work on a sustained basis. (T. 20.)

Second, Plaintiff argues that the ALJ was required to consult a vocational expert at step five based on Plaintiff's nonexertional limitations. (Dkt. No. 12, at 23-25 [Pl.'s Mem. of Law].) Here, the ALJ determined that Plaintiff's nonexertional limitations had little or no effect on the occupational base of unskilled sedentary work because Plaintiff has the ability to perform the basic mental demands of competitive, remunerative, unskilled work. (T. 22.) "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56957, at *4 (1985).

As discussed above, the ALJ properly determined that Plaintiff had the mental RFC to perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks; handle reasonable levels of simple work-related stress; make decisions directly related to the performance of simple work; and handle usual work place changes and interactions associated with simple work. (T. 17.) Accordingly, based on Plaintiff's age, education, and work experience, the ALJ properly found Plaintiff "not disabled" as directed by Medical-Vocational Rule 201.25.

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 11, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge